**JOSHUA A. SLIKER, ESQ.**
Nevada Bar No. 12493
**BARRON & PRUITT, LLP**
3890 West Ann Road
North Las Vegas, NV 89031
Telephone: (702) 870-3940
Facsimile: (702) 870-3950
E-Mail: jsliker@lvnvlaw.com
*Attorneys for Southwest Airlines*
*Co. Welfare Benefit Plan, incorrectly*
*named as Southwest Airlines Co.*
*Funded Welfare Benefit Plan*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEVADA

* * *

G. DALLAS NORTON & ASSOCIATES,

     Plaintiff,

v.

CYNTHIA HARRIS, an individual, LINCOLN FINANCIAL GROUP, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, CIGNA GROUP INSURANCE, LIFE INSURANCE COMPANY OF NORTH AMERICA, SOUTHWEST AIRLINES CO. FUNDED WELFARE BENEFIT PLAN, AMERICAN MEDICAL RESPONSE, FREMONT EMERGENCY SERVICES, RADIOLOGY ASSOCIATES OF NEVADA, ST. ROSE DOMINICAN – SAN MARTIN CAMPUS, ALIGN CHIROPRACTIC CENTENNIAL GROUP, ANTHEM CHIROPRACTIC, SELECT PHYSICAL THERAPY, PERSONAL PRIMARY CARE, P.C., LAS VEGAS RADIOLOGY, MEDICAL FUNDING RESOURCES,

     Defendants.

Case No.: _____

**PETITION FOR REMOVAL**

Defendant, SOUTHWEST AIRLINES CO. WELFARE BENEFIT PLAN ("Plan"), incorrectly named as Southwest Airlines Co. Funded Welfare Benefit Plan, removes this action to this Court, pursuant to 28 U.S.C. §§ 1441(a) and (c) and, in support thereof, states as follows:

- 1 -

1.      On July 24, 2015, Plaintiff G. Dallas Norton & Associates ("Law Firm") filed the Petition for Interpleader in the District Court of Clark County, Nevada, Case No. A-15-721756-C ("State Action").

2.      At all times relevant to this action, Defendant, Cynthia Harris ("Harris"), was a participant in the Plan, which is a self-funded employee welfare plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and the claims asserted arise out of her participation in the Plan.

3.      In the State Action, Law Firm requests that the State Court determine the Defendants' respective rights to the $35,000.00 in settlement proceeds offered to settle Harris's personal injury settlement arising out of an August 22, 2014 personal injury accident.   In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Interpleader Complaint and all documents that were served upon the Plan accompany this Notice of Removal, as Exhibit "A".

4.      This Petition for Removal is filed in the United States District Court for the District of Nevada, within the time provided by law for removal of civil actions to the United States District Court, pursuant to 28 U.S.C. § 1446.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a).

6.      This action is removable pursuant to 28 U.S.C. §§ 1331 and 1441.

7.      The claim against the Plan is a separate and independent claim, and removable under 28 U.S.C. § 1441(c); consequently, the other Defendants are not required to join in this Notice of Removal.

8.      The Plan's reimbursement provision provides that the Plan has a first priority right of subrogation and reimbursement to the extent of benefits paid, regardless of whether the Plan participant is made-whole by any recovery and notwithstanding attorney's fees.  A true and correct copy of the Plan's reimbursement provision is attached hereto as Exhibit "B".

9.      This Court has removal jurisdiction over the claims under 28 U.S.C. § 1441(a) and (c).

## BASIS FOR FEDERAL QUESTION JURISDICTION

10.     Law Firm asserts claims against the Plan, which arise out of federal law.

11.     As illustrated herein, Law Firm's claims relate to benefits the Plan provided to Harris as a result of a personal injury accident, and the State Action seeks to have the State Court determine the enforceability of the Plan's reimbursement provisions.

12.     This Court has original jurisdiction of ERISA actions under 29 U.S.C. §§ 1132 (a) and (e), because the claims relate to benefits that Harris received under the Plan and the claims are completely preempted and superseded by 29 U.S.C. § 1144(a).

13.     Law Firm alleges that it has a lien over the disputed proceeds and that under Nevada law the attorney's lien takes priority over all other claimants, including the Plan.[1] This directly contradicts the terms of the Plan.  *See* Plan terms, attached as Exhibit B.

14.     Law Firm alleges that there are other lien claimants who may have a right to the settlement proceeds in addition to the Plan and her attorney, and asks the State Court to allocate the disputed funds amongst the various claimants, and requests that the claimants submit to the jurisdiction of the State Court or have their claims forever barred.[2]  However, the Plan provides that it has a first-priority right of reimbursement that arises at the time the benefits are paid.  *See* Plan terms, attached as Exhibit B.

15.     Law Firm also requests the State Court to extinguish all claims to the disputed funds and release Harris from her obligation to comply with the Plan's reimbursement provision.

16.     Thus, Law Firm seeks to have the State Court determine the enforceability of the Plan's reimbursement provisions.  The claims with respect to the Plan derive entirely from the rights and obligations set forth in the Plan's terms and are governed by ERISA.  Consequently, the Complaint states a claim for relief under federal law and this Court has original jurisdiction over the claims at issue.

---

[1] *See* Ex. A, Interpleader Petition at ¶¶ 10-11.
[2] *See id*. at Prayer for Relief.

17.     Here, the Plan's ERISA based claim against the disputed funds is separate and independent from the claims made by the other Defendants against the disputed funds, because the Plan's claim is founded upon the Plan's terms and federal ERISA regulations it falls under this Court's exclusive jurisdiction.  *See* 29 U.S.C. § 1132(e).

18.     The Plan's claim is joined with other non-removable claims of the remaining Defendants who are citizens of Nevada and arise under state law, and, thus, this notice of removal meets the procedural requirements of 28 U.S.C. § 1441(c) and 29 U.S.C. § 1132(e), and the entire case may be removed to this Court.

19.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of the removal of this action to all parties and will file a copy of this Notice with the State Court.  A copy of the Notice of Removal being filed in the State Action is attached hereto as Exhibit "C".

WHEREFORE, Defendants remove this action from the District Court of Clark County, Nevada, to the United States District Court for the District of Nevada, in accordance with 29 U.S.C. §§ 1441 and 1446.

Dated this 3rd day of September, 2015.

BARRON & PRUITT, LLP

JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
3890 West Ann Road
North Las Vegas, NV 89031
*Attorneys for Southwest Airlines Co.*
*Welfare Benefit Plan, incorrectly named as*
*Southwest Airlines Co. Funded Welfare*
*Benefit Plan*

- 4 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of September, 2015, I served the foregoing **PETITION FOR REMOVAL** as follows:

☒ US MAIL: by placing the document(s) listed above in a sealed envelope, postage prepaid, in the United States Mail at Las Vegas, Nevada, addressed to Cynthia Harris only.

☐ BY FAX: by transmitting the document(s) listed above via facsimile transmission to the fax number(s) set forth below.

☐ BY HAND-DELIVERY: by hand-delivering the document(s) listed above to the address(es) set forth below.

☐ BY EMAIL: by emailing the document(s) listed above to the email address(es) set forth below.

☒ BY ELECTRONIC SERVICE: by electronically serving the document(s) listed above with the U.S. District Court's CM/ECF system upon the following:

G. Dallas Horton, Esq.
David L. Thomas, Esq.
Christian Z. Smith, Esq.
G. DALLAS HORTON & ASSOCIATES
4435 South Eastern Avenue
Las Vegas, Nevada  89119
*Attorneys for Plaintiff*

Anthony B. Golden, Esq.
Puneet K. Garg, Esq.
GARG GOLDEN LAW FIRM
8880 W. Sunset Road #275
Las Vegas, Nevada  89148
*Attorneys for Anthem Chiropractic*

Ingrid Patin, Esq.
Patin Law Group, PLLC
7925 W. Russell Road, No. 401714
Las Vegas, Nevada  89140
*Attorney for Defendant Align Chiropractic*

/ / /

/ / /

/ / /

1

Cynthia Harris
10245 S. Maryland Parkway #238
Las Vegas, Nevada  89183
*Defendant Pro Se*
**Via mail only**

2

3

4

5

/s/  Jill L. Williams

6

An Employee of BARRON & PRUITT, LLP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

1  G. DALLAS HORTON & ASSOCIATES
   G. DALLAS HORTON, ESQ.
2  Nevada Bar No. 5996
   DAVID L. THOMAS, ESQ.
3  Nevada Bar No. 3172
   CHRISTIAN Z. SMITH, ESQ.
4  Nevada Bar No. 8266
   4435 South Eastern Avenue
5  Las Vegas, Nevada 89119
6  (702) 380-3100
7  *Attorneys for Plaintiff*

8                      **DISTRICT COURT**

9                **CLARK COUNTY, NEVADA**

10 G. DALLAS HORTON & ASSOCIATES, a    )   CASE NO.    A-15-721756-C
11 Nevada Corporation;                 )   DEPT. NO.   XXVII
                                       )
12             Plaintiff,              )   **SUMMONS – SOUTHWEST AIRLINES**
   v.                                  )   **CO. FUNDED WELFARE BENEFIT**
13                                     )   **PLAN**
                                       )
14 CYNTHIA HARRIS, an individual,      )
   LINCOLN FINANCIAL GROUP;            )
15 THE LINCOLN NATIONAL LIFE           )
   INSURANCE COMPANY;                  )
16 CIGNA GROUP INSURANCE;              )
17 LIFE INSURANCE COMPANY OF NORTH     )
   AMERICA;                            )
18 SOUTHWEST AIRLINES CO. FUNDED       )
   WELFARE BENEFIT PLAN;               )
19 AMERICAN MEDICAL RESPONSE;          )
20 FREMONT EMERGENCY SERVICES;         )
   RADIOLOGY ASSOCIATES OF NEVADA;     )
21 ST. ROSE DOMINICAN –                )
22 SAN MARTIN CAMPUS;                  )
   ALIGN CHIROPRACTIC CENTENNIAL       )
23 GROUP;                              )
   ANTHEM CHIROPRACTIC;                )
24 SELECT PHYSICAL THERAPY;            )
25 PERSONAL PRIMARY CARE, P.C.         )
   LAS VEGAS RADIOLOGY;                )
26 MEDICAL FUNDING RESOURCES;          )
                                       )
27 . . .
28 . . .

                        Page 1 of 2

| | |
|---|---|
| 1 | ADVANCED ORTHOPEDICS & SPORTS MEDICINE; |
| 2 | ADVANCED PAIN CONSULTANTS; |
| 3 | DOE I-V, inclusive; and ROE I-V, inclusive, |
| 4 | Defendants. |

ADVANCED ORTHOPEDICS & SPORTS )
MEDICINE; )
ADVANCED PAIN CONSULTANTS; )
DOE I-V, inclusive; and ROE I-V, inclusive, )
)
         Defendants. )

**SUMMONS – SOUTHWEST AIRLINES CO. FUNDED WELFARE BENEFIT PLAN**

**NOTICE!  YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**SOUTHWEST AIRLINES CO. FUNDED WELFARE BENEFIT PLAN**

**TO THE DEFENDANT.** A Civil Complaint has been filed by the Plaintiff against you for the relief set forth in the Complaint.

     1.    If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following:

         a.    File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court.

         b.    Serve a copy of your response upon the attorney whose name and address is shown below.

     2.    Unless you respond, your default will be entered upon application of the Plaintiff and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

     3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

Issued at the direction of:

**G. DALLAS HORTON & ASSOCIATES**

By: _____
David L. Thomas, Esq.
Nevada Bar No. 3172
4436 South Eastern Ave.
Las Vegas, Nevada  89119
*Attorneys for Plaintiff*

**CLERK OF THE COURT**

JUL 2 4 2015

By: _____
Deputy Clerk
Clark County Courthouse
Regional Justice Center
200 Lewis Avenue
Las Vegas, Nevada  89101
JANEL WASHINGTON

Electronically Filed
07/24/2015 11:00:58 AM

**CLERK OF THE COURT**

1   G. DALLAS HORTON & ASSOCIATES
    G. DALLAS HORTON, ESQ.
2   Nevada Bar No. 5996
    DAVID L. THOMAS, ESQ.
3   Nevada Bar No. 3172
    CHRISTIAN Z. SMITH, ESQ.
4   Nevada Bar No. 8266
5   4435 South Eastern Avenue
    Las Vegas, Nevada 89119
6   (702) 380-3100
7   *Attorneys for Plaintiff*

8                           **DISTRICT COURT**

9                      **CLARK COUNTY, NEVADA**

10  G. DALLAS HORTON & ASSOCIATES, a        )   CASE NO.    A-15-721756-C
11  Nevada Corporation;                     )   DEPT. NO.   XXVII
                                            )
12              Plaintiff,                  )   **PLAINTIFF'S FIRST AMENDED**
    v.                                      )   **COMPLAINT IN INTERPLEADER**
13                                          )
14  CYNTHIA HARRIS, an individual,          )   **ARBITRATION EXEMPTION**
    LINCOLN FINANCIAL GROUP;                )   **CLAIMED: ACTION IN EQUITY**
15  THE LINCOLN NATIONAL LIFE               )
    INSURANCE COMPANY;                      )
16  CIGNA GROUP INSURANCE;                  )
17  LIFE INSURANCE COMPANY OF NORTH         )
    AMERICA;                                )
18  SOUTHWEST AIRLINES CO. FUNDED           )
19  WELFARE BENEFIT PLAN;                   )
    AMERICAN MEDICAL RESPONSE;              )
20  FREMONT EMERGENCY SERVICES;             )
    RADIOLOGY ASSOCIATES OF NEVADA;         )
21  ST. ROSE DOMINICAN –                    )
22  SAN MARTIN CAMPUS;                      )
    ALIGN CHIROPRACTIC CENTENNIAL           )
23  GROUP;                                  )
    ANTHEM CHIROPRACTIC;                    )
24  SELECT PHYSICAL THERAPY;                )
25  PERSONAL PRIMARY CARE, P.C.;            )
    LAS VEGAS RADIOLOGY;                    )
26  MEDICAL FUNDING RESOURCES;              )
                                            )
27  . . .
28  . . .

                            Page 1 of 5

| | |
|---|---|
| ADVANCED ORTHOPEDICS & SPORTS MEDICINE; ADVANCED PAIN CONSULTANTS; DOE I-V, inclusive; and ROE I-V, inclusive, | ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFF'S FIRST AMENDED COMPLAINT IN INTERPLEADER

COMES NOW Plaintiff, G. DALLAS HORTON & ASSOCIATES, (hereinafter "Interpleader Plaintiff") by and through its counsel, G. DALLAS HORTON & ASSOCIATES, and as for its Complaint in Interpleader against Defendants, and alleges as follows:

1.     Interpleader Plaintiff is a law firm licensed to practice in Clark County, Nevada.

2.     Defendants CYNTHIA HARRIS, an individual, LINCOLN FINANCIAL GROUP; THE LINCOLN NATIONAL LIFE INSURANCE COMPANY; CIGNA GROUP INSURANCE; LIFE INSURANCE COMPANY OF NORTH AMERICA; SOUTHWEST AIRLINES CO. FUNDED WELFARE BENEFIT PLAN; AMERICAN MEDICAL RESPONSE; FREMONT EMERGENCY SERVICES;RADIOLOGY ASSOCIATES OF NEVADA; ST. ROSE DOMINICAN – SAN MARTIN CAMPUS; ALIGN CHIROPRACTIC CENTENNIAL GROUP; ANTHEM CHIROPRACTIC; SELECT PHYSICAL THERAPY; PERSONAL PRIMARY CARE, P.C. LAS VEGAS RADIOLOGY; MEDICAL FUNDING RESOURCES; ADVANCED ORTHOPEDICS & SPORTS MEDICINE; and ADVANCED PAIN CONSULTANTS (hereinafter "Interpleader Defendants") are all businesses of unknown form doing business in the County of Clark, State of Nevada.

3.     Pursuant to NRCP 10(a) and Nurenberger Hercules-Werke GMBH v. Virostek, 107 Nev. 873, 822 P.2d 1100 (1991), the identity of resident and non-resident defendants designated herein as DOES I through X, inclusive, and ROE CORPORATIONS I through X, inclusive, are unknown to Interpleader Plaintiff at the present time; however, it is alleged and

believed these defendants were involved acts making up the basis for the Interpleader in that they provided medical services or payment for medical services that are subject to the Interpleader. As the specific identities of these parties are revealed through the course of discovery, the DOE and ROE appellations will be replaced to identify these parties by their true names and capacities.

4.      On or about August 22, 2014, CYNTHIA HARRIS was involved in an automobile accident resulting in substantial bodily injury.

5.      CYNTHIA HARRIS retained the Interpleader Plaintiff on or about January 19, 2015 to represent her in regards to the August 22, 2014 accident.  The Interpleader Plaintiff provided legal services to CYNTHIA HARRIS until settling the case.

6.      This matter resolved for a total of Thirty-Five Thousand Dollars and 00/100 cents (Fifteen Thousand Dollars and 00/100 cents ($15,000.00) with the third-party carrier; and Twenty Thousand Dollars and 00/100 cents ($20,000.00) with the first-party carrier.

7.      CYNTHIA HARRIS' damages are in excess of the settlement received from the tortfeasor/adverse Defendant's insurance carrier and Ms. Harris' underinsured motorist carrier.

8.      The remaining Interpleader Defendants are all persons or business entities who claim entitlement to the settlement as a result of the above alleged accident and who have asserted claims against the amount interpled.

9.      The combined claims made by all of the Interpleader Defendants exceed TEN THOUSAND DOLLARS ($10,000).

10.     The Interpleader Plaintiff is owed attorney fees and costs as a result of the above described claim and these proceedings and is entitled to its fees and costs prior to distribution to any

of the Interpleader Defendants under *Michel v. Eighth Judicial Dist. Court ex rel. County of Clark*, 117 Nev. 145, 17 P.3d 1003 (Nev., 2001).

11.     The Interpleader Plaintiff has a lien pursuant to NRS 18.015.

12.     The Interpleader Plaintiff is not in a position to determine the fair distribution of any available proceeds to the remainder Interpleader Defendants after the distribution to the Interpleader Plaintiff.

13.     Because this is a matter seeking equitable relief, it should be exempted from arbitration pursuant to Nevada Rule of Civil Procedure 3(a).

**WHEREFORE,** the Interpleader Plaintiff requests that the Court adjudge:

1.     That each of the Defendants are restrained from instituting any action against the Interpleader Plaintiff or any other party hereto for the recovery of any claim arising out of the above-described accident;

2.     That Defendants be required to interplead and settle between themselves and the Court each of their respective rights, if any, to the insurance proceeds available;

3.     That Interpleader Plaintiff is discharged from all liability arising out of the above-described accident, except to the extent the Court orders;

4.     That pursuant to its contingency fee agreement with CYNTHIA HARRIS the Interpleader Plaintiff receive its attorney's fees and costs from the insurance proceeds before any other distribution to any Defendant for the Interpleader Plaintiff's prosecution of the claim that the filing of this action; and

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

5.      That this matter should be exempted from arbitration pursuant to Nevada Rule of Civil Procedure 3(a).

DATED this 24th day of July, 2015.

G. DALLAS HORTON & ASSOCIATES

G. DALLAS HORTON, ESQ.
Nevada Bar No. 5996
DAVID L. THOMAS, ESQ.
Nevada Bar No. 3172
CHRISTIAN Z. SMITH, ESQ.
Bar No. 8266
4435 South Eastern Avenue
Las Vegas, Nevada  89119
*Attorneys for Plaintiff*

# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

# Southwest Airlines Co. Welfare Benefit Plan
## Summary Plan Description
## Effective January 1, 2015

**COB RULE FOR DEPENDENT CHILDREN:** If Your dependent children are covered under both You and Your Spouse's health plan, the determination of which plan is primary and pays benefits first and which plan pays second for the dependent children's charges will be applied in the following order:

1.  If Another Group Healthcare Plan does not have a COB provision, then the other group health plan is primary.
2.  The plan of the parent with a birthday earliest in the Calendar Year is primary.
3.  If both parents have the same birthday, the plan which covered the parent for the longer period of time is primary.

- If the natural parents of a dependent child are divorced or legally separated, then the determination of which plan is primary and pays benefits first and which plan pays second for the dependent children's charges will be applied in the following order:

1.  If Another Group Healthcare Plan does not have a COB provision, then the other group health plan is primary and pays benefits first.
2.  If a court decree establishes financial responsibility for medical coverage or other health care costs of the child, then the plan of the parent with court ordered financial responsibility is primary and pays benefits before all other plans that cover the child.
3.  If the parent with custody of the child has not remarried, then the plan of the parent with custody of the child is primary.
4.  If the parent with custody of the child has remarried, then the plan of the parent with custody of the child is primary. The plan of the stepparent of the child is secondary.  The plan of the parent without custody of the child pays last.
5.  If all the situations or rules above relating to dependent Coordination of Benefits are not applicable, then the plan that has covered the child for the longest continuous period is primary.

## ACTS OF THIRD PARTIES—RIGHTS OF RECOVERY

**GENERAL INFORMATION:** This provision (Acts of Third Parties—Rights of Recovery) applies when one or more of the Medical and/or Dental Programs (each is individually referred to in this section as a "Subrogating Plan") pays claims for the treatment of an Illness, Injury, or condition for which a Third Party is, or may be held, liable or legally responsible (for example, when a Subrogating Plan pays claims for the treatment of an Illness, Injury or condition caused by an automobile accident or another's negligence).  A Third Party may include, but will not be limited to, any one or more of the following: (i) the party or parties who caused the Illness, Injury, or condition; (ii) the insurer, guarantor, or other indemnifier of the party or parties who caused the Illness, Injury, or condition; (iii) the Covered Individual's own insurer (for example, uninsured, underinsured, and no fault coverage); (iv) a worker's compensation insurer; and/or (v) any other person, entity, policy, healthcare plan or insurer that is liable or legally responsible in relation to the Illness, Injury, or condition. References below to a Covered Individual include the estate or other legal representative of the Covered Individual.

**CONDITIONAL BENEFIT PAYMENTS:** Any such benefits paid by a Subrogating Plan are conditioned upon and subject to an equitable lien requiring actual repayment to the Subrogating Plan.  Such conditional benefits will be subject to a constructive trust for the benefit of the Subrogating Plan in the event the Subrogating Plan is entitled to reimbursement or subrogation as described below.  Furthermore, if the Subrogating Plan is entitled to reimbursement or subrogation and the Covered Individual fails to comply with all of the reasonable requirements of the Subrogating Plan for receipt of benefits, including cooperation with the Subrogating Plan's rights of reimbursement and subrogation, the Subrogating Plan will be entitled to restitution of any conditional benefits wrongfully paid or provided to or for the benefit of the Covered Individual.  The Subrogating Plan may require that such conditional benefits be held in escrow or trust (subject to the Plan's rights of reimbursement and subrogation) until a final determination is made regarding the Subrogating Plan's right to payments made by the third party or liability or responsibility of the Third Party for the Illness, Injury, or condition.

**LIEN:** The Subrogating Plan will have a first priority lien against, and will be entitled to recovery of, the first dollars paid or payable by any Third Party (including but not limited to insurers) with respect to an Illness, Injury, or condition of the Covered Individual for which such Third Party is, or may be held, liable or legally responsible, regardless of whether such amounts are paid pursuant to a legal judgment, arbitration award, compromise, settlement or any other arrangement and regardless of how the claims, awards, recoveries or amounts paid or payable are classified or characterized by the parties, the courts or any other person or entity, including, for example, amounts paid to or for the benefit of the Covered Individual for general damages, and regardless of whether the Covered Individual is made whole for his claim for benefits by the recovery against which the Subrogating Plan may assert its rights hereunder.  The amount of such lien will equal the lesser of: (i) the amount of benefits paid by the Subrogating Plan for the Illness, Injury, or condition plus the amount of all future benefits which may become payable under the Subrogating Plan due to the Illness, Injury, or condition, or (ii) the amount recoverable from the Third Party.

**REIMBURSEMENT FROM THIRD-PARTY RECOVERIES:** As consideration for the payment of benefits under the Subrogating Plan prior to the receipt of payment from a Third Party, the Covered Individual agrees to repay the Subrogating Plan first from any money or other benefit recovered by the Covered Individual from the Third Party who is, or may be held to be, liable or legally responsible for the Illness, Injury, or condition giving rise to the paid benefits.  The obligation to repay applies (i) whether the payment received from the Third Party is the result of a legal judgment, arbitration award, compromise, settlement, or any other arrangement, (ii) regardless of whether the Third Party has admitted liability for the payment, (iii) regardless of whether the charges are itemized in the Third Party's payment or whether the Third Party's payment is structured as a settlement for

pain and suffering or in any other manner which does not itemize charges, and (iv) regardless of whether the Covered Individual has incurred, or agreed to pay, any costs or charges in relation to securing the recovery from the Third Party. The Covered Individual may be required at any time to confirm such agreement in writing. If the Covered Individual fails to sign any such required agreement, any claims for benefits will be pended until the agreement is signed. The Subrogating Plan will not pay or be subject to offset of any recovery or in any way be responsible for any fees or costs associated with pursuing a claim against any Third Party unless the Plan agrees to do so in writing.

If such a recovery is made and the Subrogating Plan is not reimbursed as required herein, then the Covered Individual (and his or her estate or other legal representative) will be personally liable to the Subrogating Plan for the amount of the benefits paid under the Subrogating Plan for such Illness, Injury, or condition. The Subrogating Plan will be reimbursed for the total value of the claim for benefits paid by the Subrogating Plan with respect to such Illness, Injury, or condition, plus the Subrogating Plan's reasonable attorney's fees and other costs of collection, if any, but such aggregate reimbursement amount will not exceed the total amount payable to or on behalf of the Covered Individual from (i) any policy or contract from any insurance company or carrier (including, without limitation, the Covered Individual's insurer) and/or (ii) any Third Party, plan or fund as a result of a legal judgment, arbitration award, compromise, settlement or any other arrangement. In addition, the Subrogating Plan may recover interest at the rate of one and one-half percent (1½%) per Month or the maximum amount permitted by applicable law, whichever is less, commencing on the date the Covered Individual recovers any such funds from a Third Party. Reimbursement may be made by any method satisfactory to the Subrogating Plan. If repayment is not made, the Plan may reduce future benefits that would otherwise be payable for any Illness, Injury or condition of the Covered Individual up to the amount of the payment that was received from the Third Party.

Once a Covered Individual has received payment, in whole or in part, from the Third Party, future Charges Incurred and related to such Illness, Injury, or condition will not thereafter be reimbursable from, or paid directly by, the Plan, except as may be provided otherwise in a separate written agreement signed by the Covered Individual and the Subrogating Plan which makes adequate provision for the satisfaction of the Subrogating Plan's reimbursement claim. Funds paid or payable by Third Parties for future medical claims relating to the same Illness, Injury, or condition of a Covered Individual for which a Third Party is, or may be held, liable or legally responsible will be set aside, in an escrow account, for the benefit of the Covered Individual. The Subrogating Plan may require that any portion of the amount held in trust or escrow be turned over to the Subrogating Plan upon submission to the Covered Individual of proof of benefit payment by the Subrogating Plan.

**SUBROGATION OF RIGHTS AGAINST THIRD PARTIES:** As a condition to receiving benefits under the Subrogating Plan, each Covered Individual transfers to the Subrogating Plan such Covered Individual's (and his or her representative's) rights to take legal action against Third Parties arising from any Illness, Injury, or condition for which such Third Parties are, or may be held, liable or legally responsible. Upon paying or providing any such benefits, the Subrogating Plan will immediately be subrogated to and succeed to all of the Covered Individual's claims, demands, actions and rights of recovery (under all possible legal theories) against any entity including, but not limited to, Third Parties and insurance companies and carriers (including the Covered Individual's insurer). That is, the Subrogating Plan may take over the Covered Individual's right to receive payments from the Third Party to the extent of the benefits paid or payable plus the Subrogating Plan's reasonable costs of collection. It will only be necessary that the Illness, Injury, or condition occurred through the act of a Third Party for the right to recover damages to inure to the Subrogating Plan.

As further consideration for the payment of benefits under the Subrogating Plan prior to the receipt of payment from a Third Party, the Covered Individual agrees to cooperate fully in asserting the Subrogating Plan's subrogation and recovery rights against the Third Party. The Covered Individual or his or her legal representative will, within 5 days of receiving a request from the Subrogating Plan, provide all information and sign and return all documents necessary to exercise the Subrogating Plan's rights under this provision.

**OTHER PROVISIONS:**

By accepting benefits under the Subrogating Plan, the Covered Individual acknowledges that attached to the receipt of those benefits is the obligation to abide by the terms of this provision, that failure to abide by the terms of this provision constitutes wrongdoing and that in such case, the initial receipt of benefits was, therefore, ill gotten. Failure by a Covered Individual to abide by the terms of this provision will result in immediate termination of coverage of the Employee or former Employee to whom the Covered Individual's coverage is attributable and all of his or her Covered Family Members.

The Covered Individual will cooperate in assisting the Subrogating Plan in protecting the Plan's rights to reimbursement and subrogation and will not act or fail to act at any time or in any manner that prejudices the Subrogating Plan's rights under this provision (including settling a claim with a Third Party without advance notice to the Subrogating Plan).

The Subrogating Plan's rights to reimbursement and subrogation, and any recovery pursuant to those rights will not be reduced: due to the Covered Individual's own negligence; or due to the Covered Individual's not being made whole; or by any portion of a Covered Individual's attorney's fees and costs. No equitable claims or defenses of any kind shall apply to the Subrogating Plan's right to reimbursement and subrogation, and any recovery pursuant to these rights, including but not limited to offset, detrimental reliance, equitable and promissory estoppel, the "make whole" doctrine, and the "common fund" doctrine.

The Subrogating Plan has the right to recover interest at the rate of one and one-half percent (1½%) per Month or the maximum amount permitted by applicable law, whichever is less, commencing on the date the Covered Individual or his or her legal representative recovers any funds from a Third Party. The Subrogating Plan is entitled to recover its attorney's fees and costs incurred in enforcing this provision.

The Subrogating Plan is secondary to any excess insurance policy including, but not limited to, school and/or athletic policies.

If the Covered Individual resides in a state where automobile personal Injury protection or medical payment coverage is mandatory, that coverage is primary, and the Subrogating Plan takes secondary status. The Subrogating Plan will reduce benefits for an amount equal to, but not less than, the state's mandatory minimum personal Injury protection or medical payment requirement.

This provision also applies to any funds recovered from the Third Party by or on behalf of: (i) a minor Covered Individual; (ii) the estate of any Covered Individual; and (iii) any incapacitated person.

## CLAIMS PROCEDURES AND APPEALS

**IN GENERAL:** The Plan Administrator (including, for all purposes in this Claims Procedures section, any other person or entity with respect to whom Claims Administration for the Plan has been delegated, hereinafter referred to as the "Claims Administrator") has established benefit claims procedures under the Plan. The following claims procedures set forth the rules relating to (1) submission of claims for benefits, (2) the processing of claims for benefits, (3) notification to claimants of the disposition of claims for benefits, (4) the procedural requirements for a claimant to obtain an appeal of a denied or modified claim, (5) the processing of appeals of denied or modified claims, and (6) if applicable, the external review of claims that were denied or modified on appeal. The claims procedures applicable to any given claim vary depending upon whether the claim is for group health plan benefits, disability benefits, or other benefits that are non-disability and non-group health plan benefits. Accordingly, these claims procedures are divided into three sections to address each of these three groups of claims. Any claim for benefits under any benefit program that is not subject to ERISA, or any claim that relates solely to eligibility or administrative questions and not to the payment of benefits, will be deemed to be a non-disability claim under a benefit program that is not a "Group Health Plan" for purposes of these claims procedures.

In connection with the submission of any claim, the claimant (i.e., You or Your Covered Family Member) may (1) examine the Plan and any other relevant documents relating to the claim, (2) submit written comments relating to the claim, and (3) have an authorized representative act on behalf of the claimant. (The word "You in this section of the SPD refers to You, Your Covered Family Member, and any authorized representative of You or Your Covered Family Member). All claims and appeals will be processed in accordance with the governing Plan documents, and Plan provisions will be applied on a consistent basis with respect to similarly situated persons.

**NOTE: For all claims for benefits under the Plan, if You or any other person entitled to benefits under the Plan does not comply with the Plan's claims review procedures, or does not do so in a timely manner, You or such person will have failed to exhaust the administrative remedies under the Plan and may not commence any legal or equitable action claiming benefits under the Plan.**

**CLAIMS REVIEW PROCEDURE FOR GROUP HEALTH PLANS:** These claims review procedures apply to claims for benefits under any Program that is a "group health plan," including the Medical Program, Dental Program, Vision Program, and Health Care FSA Program. For claims under these Programs, different procedures apply for Urgent Care Claims, Pre-Service Claims, and Post-Service Claims, as each is described below. In addition, as indicated below, additional procedures apply for the Medical Program options that are not "grandfathered" for purposes of the Patient Protection and Affordable Care Act ("Non-Grandfathered Medical Program options"). The Regular Plan Benefit Program is the only group health plan program offered that is not a Non-Grandfathered Medical Program. Regardless of which type of claim or program is involved, to obtain payment of any benefits under these Programs, You must file a claim for benefits within 12 Months of the date in which the Eligible Charges were incurred.

- **Urgent Care Claims:** An "Urgent Care Claim" is any claim for medical care or treatment where the application of the time periods normally applicable to benefit claims could seriously jeopardize the patient's life, health, or ability to regain maximum function, or would subject the patient to severe pain that cannot be adequately managed without the Urgent Care or treatment that is the subject of the claim. Urgent Care Claims should be filed with the Claims Administrator. The Claims Administrator will provide notice of the decision on the claim as soon as possible taking into account the medical exigencies of the situation but no later than 72 hours after receipt of the claim. However, if You are currently undergoing treatment for a condition and seek to extend that Course of Treatment beyond the pre-approved period of time or number of treatments and such extension involves Urgent Care (i.e., a "concurrent claim"), notice of the decision must be given within 24 hours after the concurrent claim is filed, if the concurrent claim is filed at least 24 hours before the end of original Course of Treatment. If the concurrent claim is not filed within this 24-hour period, the normal 72-hour rule will apply.

  IF THE CLAIMS ADMINISTRATOR SUBSEQUENTLY DECIDES TO REDUCE OR TERMINATE A PREVIOUSLY APPROVED ONGOING COURSE OF MEDICAL TREATMENT, THE CLAIMS ADMINISTRATOR WILL NOTIFY YOU OF SUCH ACTION AT A TIME SUFFICIENTLY IN ADVANCE OF THE

## ADDITIONAL PLAN INFORMATION

**OFFICIAL NAME OF THE PLAN:  SOUTHWEST AIRLINES CO. WELFARE BENEFIT PLAN**

Portions of the Plan are also known as the Medical Program, Dental Program, Vision Program, Flexible Benefits Program, Supplemental Medical and Dental Program for Specified Pilots, Retiree Medical and Dental Program for Specified Pilots, Retiree Health Care Plan For Ramp, Operations, Provisioning and Freight Agents, Noncontract Retiree Health Care Plan, Retiree Health Care Plan for Mechanics, Retiree Health Care Plan for Flight Attendants, Retiree Health Care Plan for Reservation and Customer Service Agents, Southwest Airlines Co. Funded Separation Welfare Benefit Plan, Life Insurance and Accidental Death and Dismemberment Plan, Long Term Disability Plan, Adoption Assistance Expense Reimbursement Program and Wellness Program.

**PLAN NUMBER:** 501     **EMPLOYER IDENTIFICATION NUMBER:** 74-1563240

**EMPLOYER AND PLAN SPONSOR:**
Southwest Airlines Co.
2702 Love Field Dr.
P. O. Box 36611, HDQ-6EB
Dallas, TX 75235
(214) 792-4000

**PLAN ADMINISTRATOR:**
Southwest Airlines Co. Board of Trustees
c/o Southwest Airlines Co.
2702 Love Field Dr.
P. O. Box 36611, HDQ-6EB
Dallas, TX 75235
(214) 792-4000

**AGENT FOR SERVICE OF LEGAL PROCESS:** Legal process may be served on the Plan Administrator.

**TYPE OF PLAN:**  Welfare plan providing benefits for medical, dental, prescription, vision, Life Insurance, AD&D, long term disability coverage, health care and dependent care flexible spending account benefits, adoption assistance expense reimbursement benefits, and Wellness Programs.

**PLAN YEAR:**  The Plan Year is the Calendar Year (January 1 to December 31).

**FUNDING AND INSURANCE:**  The Plan is funded through general assets of Southwest Airlines Co. and contributions from Participants and from investment earnings.  The Plan Administrator self-administers benefits under the Adoption Assistance Expense Reimbursement Plan.  Adoption assistance expense reimbursement benefits are paid from the general assets of Southwest Airlines Co.  Certain Programs are insured and administered by Insurance Carriers as listed below.

**Life Insurance and AD&D Program**
Metropolitan Life Insurance Company
200 Park Avenue
New York, NY  10166
(866) 492-6983
Claims (800) 638-6420, #2
Statement of Health (800) 638-6420, #1
www.metlife.com/mybenefits

**LTD Program**
Cigna (Life Insurance Company of North America)
1601 Chestnut Street
Philadelphia, PA  19192-2235
(800) 732-1603
Claims (888) 873-2127
www.cigna.com

**The Vision Program**
EyeMed Vision Care
4000 Luxottica Place
Mason, OH  45040
(512) 733-5288
www.eyemedvisioncare.com/swa

**COLLECTIVE BARGAINING AGREEMENTS:**
Portions of the Plan may be maintained pursuant to one or more collective bargaining agreements between Southwest and the collective bargaining groups listed below.  Copies of such agreements may be obtained by written request to the Plan Administrator and are available for inspection during normal business hours.

- Aircraft Mechanics Fraternal Assoc. for the Facilities Maintenance Technicians
- Aircraft Mechanics Fraternal Assoc. for the Mechanics
- Aircraft Mechanics Fraternal Assoc. for the Aircraft Appearance Technicians
- Intl. Brotherhood of Teamsters – Airline Division for the Stock Clerks
- Intl. Brotherhood of Teamsters – Airline Division for the Flight Simulator Technicians
- Transport Workers Union of America Local 556 for the Flight Attendants
- Transport Workers Union of America Local 555 for the Ramp, Operations, Provisioning and Freight Agents
- Southwest Airlines Employees Assoc. for the Flight Dispatchers and Dispatcher Assistants
- Southwest Airlines Pilots' Assoc. for the Pilots
- Southwest Airlines Professional Instructors' Assoc. for the Flight Instructors
- Intl. Assoc. of Machinists and Aerospace Workers for the Customer Service and Customer Representatives

## LEGAL NOTICES

### YOUR RIGHTS UNDER ERISA

As a Participant the Plan, You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan Participants shall be entitled to:

**RECEIVE INFORMATION ABOUT YOUR PLAN AND BENEFITS:**

- Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.
- Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated SPD. The Administrator may make a reasonable charge for the copies.
- Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each Participant with a copy of this summary annual report.

**CONTINUE GROUP HEALTH PLAN COVERAGE:**

- Continue health care coverage for Yourself, Spouse or dependents if there is a loss of coverage under a COBRA Plan as a result of a qualifying event. You or Your dependents may have to pay for such coverage. Review this SPD and the documents governing the COBRA Plan on the rules governing Your COBRA continuation coverage rights.

**PRUDENT ACTIONS BY PLAN FIDUCIARIES:** In addition to creating rights for Plan Participants ERISA imposes duties upon the people who are responsible for the operation of the Employee benefit plan. The people who operate Your plan, called fiduciaries of the Plan, have a duty to do so prudently and in the interest of You and other Plan Participants and beneficiaries. No one, including Your employer, Your union, or any other person, may fire You or otherwise discriminate against You in any way to prevent You from obtaining a welfare benefit or exercising Your rights under ERISA.

**ENFORCE YOUR RIGHTS:** If Your claim for a welfare benefit is denied or ignored, in whole or in part, You have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps You can take to enforce the above rights. For instance, if You request a copy of Plan documents or the latest annual report from the Plan and do not receive them within 30 days, You may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay You up to $110 a day until You receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If You have a claim for benefits which is denied or ignored, in whole or in part, You may file suit in a state or Federal court. In addition, if You disagree with the Plan's decision or lack thereof concerning the qualified status of a medical child support order, You may file suit in Federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if You are discriminated against for asserting Your rights, You may seek assistance from the U.S. Department of Labor, or You may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If You are successful the court may order the person You have sued to pay these costs and fees. If You lose, the court may order You to pay these costs and fees, for example, if it finds Your claim is frivolous.

**ASSISTANCE WITH YOUR QUESTIONS:** If You have any questions about Your Plan, You should contact the Plan Administrator. If You have any questions about this statement or about Your rights under ERISA, or if You need assistance in obtaining documents from the Plan Administrator, You should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in Your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about Your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**MANDATORY VENUE:**

If you wish to file a lawsuit to challenge a final claim determination or to address any other dispute arising out of or relating to this Plan, you must do so in federal court in **Dallas County, Texas**.  The federal courts in **Dallas County, Texas** shall have **exclusive jurisdiction** over all disputes arising out of or in any way relating to this Plan.

### TO WHOM PAYABLE

Short Term Disability Benefits will be paid to You.  If any person to whom benefits are payable is a minor or is declared by a court as incompetent or, in the opinion of the Plan, is not able to give a valid receipt, such payment will be made to his or her legal guardian.  However, if no request for payment has been made by the legal guardian, the Plan, may at its option, make payment to the person or institution appearing to have assumed custody and support.

If You die while any Short Term Disability Benefits remain unpaid, the Plan may, at its option, make direct payment to any of the following living relatives of You:  Spouse, children, mother, father, brothers or sisters; or to the executors or administrators of Your estate.  The Plan may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release the Plan from all liability for any payment made.

### PHYSICAL EXAMINATION AND AUTOPSY

The Plan, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require.  The Plan may, at its expense, require an autopsy unless prohibited by law.

### PHYSICIAN/PATIENT RELATIONSHIP

You will have the right to choose any Physician who is practicing legally.  The Plan will in no way disturb the Physician/patient relationship.

## CLAIM PROCEDURES

### WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When You are eligible to receive benefits under the Plan, You must request a claim form or obtain instructions for submitting your claim telephonically or electronically, from the Claim Administrator appointed by the Plan Administrator (as identified in Section 14.1).  All claims You submit must be on the claim form or in the electronic or telephonic format provided by the Claim Administrator.  You must complete your claim according to directions provided by the Claim Administrator. If these forms or instructions are not available, You must provide a written statement of proof of loss.  After You have completed the claim form or written statement, You must submit it to the Claim Administrator.

The Claim Administrator is the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims.  The Claim Administrator shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.  All decisions made by the Claim Administrator shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

Please see the description of disability claims under the Welfare Benefit Plan SPD for detailed information regarding the manner of submitting and timing and information requirements surrounding claims under this Plan and appeals procedures with respect to any benefit denials under this Plan.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Participant in this Plan You are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). Please see the Welfare Benefit Plan Summary Plan Description for a description of certain of your rights and protections under ERISA.

### ADDITIONAL INFORMATION ABOUT THE PLAN

Please see the Welfare Benefit Plan SPD for additional information regarding the Southwest Airlines Co. Welfare Benefit Plan and Southwest.

The Board of Trustees of Southwest serves as the Plan Administrator of the Southwest Airlines Co. Welfare Benefit Plan.  Because this Plan as a component Program under the Southwest Airlines Co. Welfare Benefit Plan, the Board of Trustees of Southwest is also the Plan Administrator of this Plan.  Southwest is the Employer, the Plan Sponsor and the named fiduciary under this Plan.  In addition, all benefits payable under this Plan are paid by Southwest (*i.e.*, the Plan is self-insured).

Southwest Airlines Co. has contracted with Cigna to serve as Claim Administrator under this Plan.  Cigna is also a named fiduciary under the Plan.  All claims under this Plan should be submitted to Cigna.  Cigna may be contacted at:

Cigna (Life Insurance Company of North America)
1601 Chestnut Street
Philadelphia, PA  19192-2235
888-873-2127
Spanish:  866-562-8421
www.cigna.com

### END OF SECTION

# EXHIBIT C

# EXHIBIT C

# EXHIBIT C

1 | **REMV**
**JOSHUA A. SLIKER, ESQ.**
2 | Nevada Bar No. 12493
**BARRON & PRUITT, LLP**
3 | 3890 West Ann Road
North Las Vegas, NV 89031
4 | Telephone: (702) 870-3940
Facsimile: (702) 870-3950
5 | E-Mail: jsliker@lvnvlaw.com
*Attorneys for Southwest Airlines*
6 | *Co. Welfare Benefit Plan, incorrectly*
*named as Southwest Airlines Co.*
7 | *Funded Welfare Benefit Plan*

**DISTRICT COURT**

8

**CLARK COUNTY, NEVADA**

9

\*\*\*\*\*

10 | G. DALLAS NORTON & ASSOCIATES,          | Case No.:       A-15-721756-C

11 |          Plaintiff,          | Dept No.:       XXVII

12 | vs.

13 | CYNTHIA HARRIS, an individual, LINCOLN
FINANCIAL GROUP, THE LINCOLN
14 | NATIONAL LIFE INSURANCE COMPANY,
CIGNA GROUP INSURANCE, LIFE
15 | INSURANCE COMPANY OF NORTH
AMERICA, SOUTHWEST AIRLINES CO.
16 | FUNDED WELFARE BENEFIT PLAN,
AMERICAN MEDICAL RESPONSE,
17 | FREMONT EMERGENCY SERVICES,
RADIOLOGY ASSOCIATES OF NEVADA, ST.
18 | ROSE DOMINICAN – SAN MARTIN
CAMPUS, ALIGN CHIROPRACTIC
19 | CENTENNIAL GROUP, ANTHEM
CHIROPRACTIC, SELECT PHYSICAL
20 | THERAPY, PERSONAL PRIMARY CARE,
P.C., LAS VEGAS RADIOLOGY, MEDICAL
21 | FUNDING RESOURCES,

22 |          Defendants.

23 | TO:    **THE HONORABLE JUDGES OF THE EIGHTH JUDICIAL DISTRICT COURT,
CLARK COUNTY NEVADA**

24

25

26 | Defendant, Southwest Airlines Co. Welfare Benefit Plan ("Plan"), incorrectly named as

Southwest Airlines Co. Funded Welfare Benefit Plan, hereby gives notice that it has filed a Petition

27 | for Removal and related papers to the United States District Court for the District of Nevada.  By the

28

*(left margin, vertical text)* **BARRON & PRUITT, LLP**  ATTORNEYS AT LAW  3890 WEST ANN ROAD  NORTH LAS VEGAS, NEVADA 89031  TELEPHONE (702) 870-3940  FACSIMILE (702) 870-3950

1

1   filing of the Petition for Removal, a copy of which is attached hereto as Exhibit "A", in the United

2   States District Court for the District of Nevada, this case has been removed from this Court to said

3   District Court pursuant to 28 U.S.C. §§ 1331 and 1441, *et seq*.

4         PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 1446, the filing of this

5   Notice effects the removal of this action and this Court is directed to "proceed no further unless and

6   until the case is remanded."  28 U.S.C. § 1446(d).

7         DATED this 3rd day of September, 2015.

8                                 BARRON & PRUITT, LLP

9

10                                 JOSHUA A. SLIKER, ESQ.

11                                 Nevada Bar No. 12493
                                   3890 West Ann Road

12                                 North Las Vegas, Nevada 89031
                                   *Attorneys for Southwest Airlines Co. Welfare*

13                                 *Benefit Plan, incorrectly named as Southwest*
                                   *Airlines Co. Funded Welfare*

14                                 *Benefit Plan*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN ROAD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 3rd day of September, 2015, I served the foregoing **NOTICE OF REMOVAL** as follows:

☒   US MAIL:  by placing the document(s) listed above in a sealed envelope, postage prepaid, in the United States Mail at Las Vegas, Nevada, addressed to the parties set forth below. (Defendant Cynthia Harris only)

☐   BY FAX:  by transmitting the document(s) listed above via facsimile transmission to the fax number(s) set forth below.

☐   BY HAND-DELIVERY:   by hand-delivering the document(s) listed above to the address(es) set forth below.

☐   BY EMAIL:   by emailing the document(s) listed above to the email address(es) set forth below.

☒   BY ELECTRONIC SERVICE: by electronically serving the document(s) listed above with the Eighth Judicial District Court's WizNet system upon the following:

G. Dallas Horton, Esq.
David L. Thomas, Esq.
Christian Z. Smith, Esq.
G. DALLAS HORTON & ASSOCIATES
4435 South Eastern Avenue
Las Vegas, Nevada  89119
*Attorneys for Plaintiff*

Anthony B. Golden, Esq.
Puneet K. Garg, Esq.
GARG GOLDEN LAW FIRM
8880 W. Sunset Road #275
Las Vegas, Nevada  89148
*Attorneys for Anthem Chiropractic*

Ingrid Patin, Esq.
Patin Law Group, PLLC
7925 W. Russell Road, No. 401714
Las Vegas, Nevada  89140
*Attorney for Defendant Align Chiropractic*

/ / /

/ / /

/ / /

/ / /

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN ROAD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950

3

Cynthia Harris
10245 S. Maryland Parkway #238
Las Vegas, Nevada  89183
*Defendant Pro Se*
**Via mail only**

/s/  Jill L. Williams

An Employee of BARRON & PRUITT, LLP

BARRON & PRUITT, LLP
ATTORNEYS AT LAW
3890 WEST ANN ROAD
NORTH LAS VEGAS, NEVADA 89031
TELEPHONE (702) 870-3940
FACSIMILE (702) 870-3950