**JOSHUA A. SLIKER, ESQ.**
Nevada Bar No. 12493
**BARRON & PRUITT, LLP**
3890 West Ann Road
North Las Vegas, NV 89031
Telephone: (702) 870-3940
Facsimile: (702) 870-3950
E-Mail: jsliker@lvnvlaw.com

*Attorneys for the Southwest Airlines Co. Welfare Benefit Plan, incorrectly named as Southwest Airlines Co. Funded Welfare Benefit Plan*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| G. DALLAS NORTON & ASSOCIATES,<br><br>   Plaintiff,<br><br>vs.<br><br>CYNTHIA HARRIS, an individual, LINCOLN FINANCIAL GROUP, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, CIGNA GROUP INSURANCE, LIFE INSURANCE COMPANY OF NORTH AMERICA, SOUTHWEST AIRLINES CO. FUNDED WELFARE BENEFIT PLAN, AMERICAN MEDICAL RESPONSE, FREMONT EMERGENCY SERVICES, RADIOLOGY ASSOCIATES OF NEVADA, ST. ROSE DOMINICAN – SAN MARTIN CAMPUS, ALIGN CHIROPRACTIC CENTENNIAL GROUP, ANTHEM CHIROPRACTIC, SELECT PHYSICAL THERAPY, PERSONAL PRIMARY CARE, P.C., LAS VEGAS RADIOLOGY, MEDICAL FUNDING RESOURCES,<br><br>   Defendants. | Case No.: 2:15-cv-01693-JCM-NJK<br><br>**DEFENDANT SOUTHWEST AIRLINES CO. WELFARE BENEFIT PLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISTRIBUTE INTERPLEADER FUNDS** |

Defendant, Southwest Airlines Co. Welfare Benefit Plan ("Plan"), incorrectly named as Southwest Airlines Co. Funded Welfare Benefit Plan, submits its Response in Opposition to Plaintiff's Motion to Distribute Interpleader Funds as follows:

1

## I. INTRODUCTION

Cynthia Harris ("Harris") was involved in a personal injury accident on or about August 22, 2014 ("Accident").[1] Harris retained G. Dallas Norton & Associates ("Law Firm"), who filed a lawsuit on behalf of Harris. As a result of the lawsuit, Harris obtained $35,000.00 in settlement proceeds ("Settlement Proceeds").

At all times relevant to this action, Harris was a participant in the Plan, which is self-funded and covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan contains a subrogation and reimbursement provision that provides:

> **ACTS OF THIRD PARTIES-RIGHTS OF RECOVERY**
>
> **GENERAL INFORMATION:** This provision (Acts of Third Parties-Rights of Recovery) applies when one or more of the Medical and/or Dental Programs (each is individually referred to in this section as a "Subrogating Plan") pays claims for the treatment of an Illness, Injury, or condition for which a Third Party is, or may be held, liable or legally responsible (for example, when a Subrogating Plan pays claims for the treatment of an Illness, Injury or condition caused by an automobile accident or another's negligence ). A Third Party may include, but will not be limited to, anyone or more of the following: (i) the party or parties who caused the Illness, Injury, or condition; (ii) the insurer, guarantor, or other indemnifier of the party or parties who caused the Illness, Injury, or condition; (iii) the Covered Individual's own insurer (for example, uninsured, underinsured, and no fault coverage); (iv) a worker's compensation insurer; and/or (v) any other person, entity, policy, healthcare plan or insurer that is liable or legally responsible in relation to the Illness, Injury, or condition. References below to a Covered Individual include the estate or other legal representative of the Covered Individual.
>
> **CONDITIONAL BENEFIT PAYMENTS:** Any such benefits paid by a Subrogating Plan are conditioned upon and subject to an equitable lien requiring actual repayment to the Subrogating Plan. Such conditional benefits will be subject to a constructive trust for the benefit of the Subrogating Plan in the event the Subrogating Plan is entitled to reimbursement or subrogation as described below. Furthermore, if the Subrogating Plan is entitled to reimbursement or subrogation and the Covered Individual fails to comply with all of the reasonable requirements of the Subrogating Plan for receipt of benefits, including cooperation with the Subrogating Plan's rights of reimbursement and subrogation, the Subrogating Plan will be entitled to restitution of any conditional benefits wrongfully paid or provided to or for the benefit of the Covered Individual. The Subrogating Plan may require that such

---

[1] See Notice of Removal, RE #1 at p. 2, ¶ 3.

2

conditional benefits be held in escrow or trust (subject to the Plan's rights of reimbursement and subrogation) until a final determination is made regarding the Subrogating Plan's right to payments made by the third party or liability or responsibility of the Third Party for the Illness , Injury, or condition.

**LIEN:** The Subrogating Plan will have a first priority lien against, and will be entitled to recovery of, the first dollars paid or payable by any Third Party (including but not limited to insurers) with respect to an Illness, Injury, or condition of the Covered Individual for which such Third Party is, or may be held, liable or legally responsible, regardless of whether such amounts are paid pursuant to a legal judgment, arbitration award, compromise, settlement or any other arrangement and regardless of

how the claims, awards, recoveries or amounts paid or payable are classified or characterized by the parties, the courts or any other person or entity, including, for example, amounts paid to or for the benefit of the Covered Individual for general damages, and regardless of whether the Covered Individual is made whole for his claim for benefits by the recovery against which the Subrogating Plan may assert its rights hereunder. The amount of such lien will equal the lesser of: (i) the amount

of benefits paid by the Subrogating Plan for the Illness, lnjury, or condition plus the amount of all future benefits which may become payable under the Subrogating Plan due to the Illness, Injury, or condition, or (ii) the amount recoverable from the Third Party.

**REIMBURSEMENT FROM THIRD PARTY RECOVERIES:** As consideration for the payment of benefits under the Subrogating Plan prior to the receipt of payment from a Third Party, the Covered Individual agrees to repay the Subrogating Plan first from any money or other benefit recovered by the Covered Individual from the Third Party who is, or may be held to be, liable or legally responsible for the Illness, Injury, or condition giving rise to the paid benefits.  The obligation to repay applies (i) whether the payment received from the Third Party is the result of a legal judgment. arbitration award, compromise, settlement, or any other arrangement, (ii) regardless of whether the Third Party has admitted liability for the payment, (iii) regardless of whether the charges are itemized in the Third Party's payment or whether the Third Party's payment is structured as a settlement for pain and suffering or in any other manner which does not itemize charges, and (iv) regardless of whether the Covered Individual has incurred, or agreed to pay, any costs or charges in relation to securing the recovery from the Third Party.  The Covered Individual may be required at any time to confirm such agreement in writing. If the Covered Individual fails to sign any such required agreement, any claims for benefits will be pended until the agreement is signed.  The Subrogating Plan will not pay or be Subject to offset of any recovery or in anyway be responsible for any fees or costs associated with pursuing a claim against any Third Party unless the Plan agrees to do so in writing.

If such a recovery is made and the Subrogating Plan is not reimbursed as required herein, then the Covered Individual (and his or her estate or other legal representative) will be personally liable to the Subrogating Plan for the amount of the benefits paid under the Subrogating Plan for such Illness, Injury, or condition. The Subrogating Plan will be reimbursed for the total value of the claim for benefits paid by the Subrogating Plan with respect to such Illness, Injury, or condition, plus the Subrogating Plan's reasonable attorney's fees and other costs of collection, if any, but such aggregate reimbursement amount will not exceed the total amount payable to or on behalf of the Covered Individual from (i) any policy or contract from any insurance company or carrier (including, without limitation , the Covered Individual's insurer) and/or (ii) any Third Party, plan or fund as a result of a legal judgment, arbitration award, compromise, settlement or any other arrangement.  In addition, the Subrogating Plan may recover interest at the rate of one and one-half percent (1.5%) per Month or the maximum amount permitted by applicable law, whichever is less, commencing on the date the Covered Individual recovers any such funds from a Third Party.  Reimbursement may be made by any method satisfactory to the Subrogating Plan. If repayment is not made, the Plan may reduce future benefits that would otherwise be payable for any Illness, Injury or condition of the Covered Individual up to the amount of the payment that was received from the Third Party.

Once a Covered Individual has received payment, in whole or in part, from the Third Party, future Charges Incurred and related to such Illness, Injury, or condition will not thereafter be reimbursable from, or paid directly by, the Plan, except as may be provided otherwise in a separate written agreement signed by the Covered Individual and the Subrogating Plan which makes adequate provision for the satisfaction of the Subrogating Plan's reimbursement claim. Funds paid or payable by Third Parties for future medical claims relating to the same Illness, Injury, or condition of a Covered Individual for which a Third Party is, or may be held, liable or legally responsible will be set aside, in an escrow account, for the benefit of the Covered Individual.  The Subrogating Plan may require that any portion of the amount held in trust or escrow be turned over to the Subrogating Plan upon submission to the Cove red Individual of proof of benefit payment by the Subrogating Plan.

**OTHER PROVISIONS:**  By accepting benefits under the Subrogating Plan, the Covered Individual acknowledges that attached to the receipt of those benefits is the obligation to abide by the terms of this provision, that failure to abide by the terms of this provision constitutes wrongdoing and that in such case, the initial receipt of benefits was, therefore, ill gotten. Failure by a Covered Individual to abide by the terms of this provision will result in immediate termination of coverage of the Employee or former Employee to whom the Covered Individual's coverage is attributable and all of his or her Covered Family Members.

The Covered Individual will cooperate in assisting the Subrogating Plan in

> protecting the Plan's rights to reimbursement and subrogation and will not act or fail to act at any time or in any manner that prejudices the Subrogating Plan's rights under this provision (including settling a claim with a Third Party without advance notice to the Subrogating Plan).
>
> The Subrogating Plan's rights to reimbursement and subrogation, and any recovery pursuant to those rights will not be reduced: due to the Covered Individual's own negligence; or due to the Covered Individual's not being made whole; or by any portion of a Covered Individual's attorney's fees and costs. No equitable claims or defenses of any kind shall apply to the Subrogating Plan's right to reimbursement and Subrogation, and any recovery pursuant to these rights, including but not limited to offset, detrimental reliance, equitable and promissory estoppel, the "make whole" doctrine, and the "common fund" doctrine. The Subrogating Plan has the right to recover interest at the rate of one and one-half percent (1½ %) per Month or the maximum amount permitted by applicable law, whichever is less, commencing on the date the Covered Individual or his or her legal representative recovers any funds from a Third Party. The Subrogating Plan is entitled to recover its attorney's fees and costs incurred in enforcing this provision.
>
> The Subrogating Plan is secondary to any excess insurance policy including, but not limited to, school and/or athletic policies.
>
> If the Covered Individual resides in a state where automobile personal injury protection or medical payment coverage is mandatory, that coverage is primary, and the Subrogating Plan takes secondary status. The Subrogating Plan will reduce benefits for an amount equal to, but not less than, the state's mandatory minimum personal Injury protection or medical payment requirement.
>
> This provision also applies to any funds recovered from the Third Party by or on behalf of: (i) a minor Covered Individual; (ii) the estate of any Covered Individual; and (iii) any incapacitated person.[2]

In accordance with its terms, the Plan has a first priority right of subrogation and reimbursement to the extent of benefits paid on behalf of Harris, regardless of whether she is made whole and notwithstanding attorney's fees. To date, the Plan has paid $9,124.56 in benefits on Harris's behalf as a result of the Accident.[3]

In addition to the Plan's reimbursement interest, Harris has a number of lien creditors claiming a right to the Settlement Proceeds. As a result of the competing claims, Law Firm filed its initial Complaint in interpleader on July 20, 2015. Law Firm filed its Amended Complaint for Interpleader on July 24, 2015. The Plan removed this action, and submitted a response to the

---

[2] *See* RE #9-1, Plan Provisions.
[3] *See* RE #9-2, Itemization of Benefits.

5

Interpleader Complaint asserting its reimbursement interest of $9,124.56.[4]

## II. LEGAL ARGUMENT

### A. The Plan is entitled to full reimbursement from the Settlement Proceeds.

The primary purpose of ERISA is to ensure the integrity of written plans.[5] ERISA plans are to be enforced as written; thus, courts should not reduce a plan's recovery based on the make-whole rule or require a plan to pay participant attorney's fees in the face of plan language to the contrary.[6] As noted above the Plan's reimbursement provision expressly disclaims the make-whole rule, and common fund doctrine. Additionally, the Plan's reimbursement is attached to specifically identifiable funds, which are subject to this interpleader.[7] The Plan has paid $9,124.56 in benefits on Harris's behalf as a result of the Accident and Harris recovered $35,000.00 in settlement proceeds. Thus, the Plan is entitled to full reimbursement out of the interpleader funds.

### B. The Plan's reimbursement interest takes priority over Law Firm and all other lien claimants.

Here, the Plan's terms expressly state that the Plan "has first priority with respect to its right to reduction, reimbursement and subrogation" and that the Plan is not subject to any state-law including, but not limited to, the "make whole" and "common fund doctrine", nor shall the plan's recovery rights be reduced due to the Covered Person not being made whole, or by any portion of her attorney's fees.[8] Here, the first priority rights conferred by the Plan are controlling and the Plan is entitled to full reimbursement before the other lien claimants.[9]

### C. Any Nevada state-law that interferes with the Plan's reimbursement interest is preempted.

The breadth and scope of ERISA's preemption clause is well documented and has been articulated on several occasions. ERISA's civil enforcement provision, 29 U.S.C. § 1132,

---

[4] See RE #9, Answer to Interpleader Complaint.
[5] Heimeshoff v. Hartford Life & Accident Insurance Co., 134 S. Ct. 604, 612 (2013); U.S. Airways v. McCutchen, 133 S. Ct. 1537, 1547-48 (2013); Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco, 338 F.3d 680, 691 (7th Cir. 2003).
[6] McCutchen, 133 S. Ct. at 1551.
[7] Varco, 338 F.3d at 687-88 (7th Cir. 2003); Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Piorot & Wainsbrough, 354 F.3d 348, 356-58 (5th Cir. 2003); see also RE #1-1 at p.7, ¶ 9.
[8] See RE #9-1 at p. 4.
[9] Mutual of Omaha Ins. Co. v. Estate of Arachikavitz, 2:06-cv-0830-BES, 2007 U.S. Dist. LEXIS 71172 at *9-10 (D. Nev. Sept. 20, 2007).

governs all claims asserted in connection with an ERISA-covered employee benefits plan.[10] ERISA also preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…"[11] The preemption clause found in 29 U.S.C. § 1144(a) is "conspicuous for its breadth."[12] Preemption under 29 U.S.C. § 1144(a) is a defense against state law claims that relate to an ERISA plan. A state law relates to an ERISA plan if "it has a connection with or reference to" an ERISA plan.[13]

ERISA defines the term "state law" to include, "[a]ll laws, decisions, rules, regulations, or other State action having the effect of law, of any State."[14] ERISA preempts state law in a "deliberately expansive" manner and the phrase "relate to" should, therefore, be given a broad common sense meaning.[15] ERISA wholly displaces state law through such "extraordinary preemptive power" that it converts any state law claim falling within the scope of ERISA into a claim based upon federal law.[16]

The United States Supreme Court has consistently held that state laws that would reduce an ERISA-covered plan's right of subrogation are preempted by ERISA.[17] In Egelhoff, the United States Supreme Court held that a state law that affects the manner in which health benefits are paid to and from an ERISA-covered plan due to the death of a covered person is preempted by ERISA. Of particular importance here, the Supreme Court stated:

> The statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than those identified by the plan documents. The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from a plan' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D)…[18]

Here, as in Egelhoff, the Plan terms yield a different result as to how plan assets are recovered than the Nevada lien laws. In Nevada, attorney liens take priority over medical

---

[10] See 29 U.S.C. § 1132(a).
[11] See 29 U.S.C. § 1144(a).
[12] Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).
[13] Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001); Ingersoll-Rand, 498 U.S. at 139.
[14] See 29 U.S.C. § 1144(c)(1).
[15] See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987); see also FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990) (stating that "the preemption clause is conspicuous for its breadth").
[16] See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987)).
[17] See Holliday, 498 U.S. at 59-60.
[18] Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001).

provider liens, but the statutes do not address priority regarding reimbursement.[19] The Plan's terms, however, provide that the Plan has a first priority right of reimbursement, regardless of whether the covered person is made whole and before payment for attorneys' fees. Nevada's lien statutes direct payment of the Settlement Proceeds according to state law, rather than the priority set forth in the Plan and are preempted.[20]

Here, the parties are seeking to diminish the Plan's reimbursement and subrogation rights in Harris's third-party recovery by operation of state-law. Consequently, this Court should follow established precedent in holding that these lien statutes have an "impermissible connection" to the Plan, and are preempted under 29 U.S.C. § 1144(a).[21]

### IV.     Law Firm's claims are completely preempted under 29 U.S.C. § 1132(a).

Numerous courts have been faced with subrogation disputes filed by ERISA participants and beneficiaries, and have consistently re-characterized these disputes as a claim for benefits under 29 U.S.C. § 1132(a)(1)(B.[22]  In the leading case on this issue, Arana v. Ochsner Health Plan, the plaintiff brought a claim for a declaratory judgment alleging that the defendant plan's rights of subrogation and reimbursement were invalid under a Louisiana statute.[23]  The Fifth Circuit found that the participant's claims were preempted and fell within the scope of 29 U.S.C. § 1132(a)(1)(B).[24]  The Court stated that although the benefits were already paid by the plan, the plaintiff had not fully "recovered" the benefits because he did not obtain them free of the plan's subrogation claims.[25]  "Alternatively, one could say that Arana seeks to enforce his rights under

---

[19] Michel v. Eighth Judicial District Court of the State of Nevada, 117 Nev. 145, 17 P.3d 1003 (Nev. 2001).
[20] Estate of Arachikavitz, 2007 U.S. Dist. LEXIS 71172 at *10-11 (citing Egelhoff, 532 U.S. at 147).
[21] See Davila, 542 U.S. at 200 (holding that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent, to make the ERISA remedy exclusive and is therefore preempted.); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) (holding that state-law bad faith, breach of contract, and fraud claims were all preempted by ERISA); Ford v. Unum Ins. Co. of Am., 351 Fed. Appx. 703, 706 (3d Cir. 2009) (citing Pryzbowski v. U.S. Healthcare, 245 F.3d 266, 278 (3d Cir. 2001) (holding that suits for denial of benefits couched in terms of common law breach of contract claims are preempted.)); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1008 (9th Cir. 1998); Hogan v. Kraft Foods, 969 F.2d 142 (5th Cir. 1992).
[22] Administrative Committee for the Wal-Mart Stores, Inc. Associates Health and Welfare Plan v. Salazar, 525 F. Supp. 2d 1103, 1110 (D. Ariz. 2007)); Levine v. United Healthcare Corp., 402 F.3d 156, 163 (3d Cir. 2005); Arana v. Ochsner Health Plan, 338 F.3d 433, 438 (5th Cir. 2003); Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 291(4th Cir. 2003).
[23] Arana, 338 F.3d at 437.
[24] Id. at 438.
[25] Id. at 438.

the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan."[26] The same holds true here.

Law Firm asserts that it should be entitled to its fees and costs without regard to the plan's reimbursement provision, and that Harris should keep the full amount of benefits paid by the Plan without regard to the plan's reimbursement provision. This is a claim for additional benefits under the Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). Because Law Firm seeks to allow Harris to retain additional benefits under the Plan, it is derived entirely from the rights and obligations established by the Plan's terms.[27] Consequently, this cause of action falls within the scope of Section 502(a)(1)(B) of ERISA, and is completely preempted.[28]

### III. CONCLUSION

The Court has before it identifiable funds that belong in good conscience to the Plan. As illustrated herein, the Plan is entitled to an equitable lien by agreement over the Settlement Proceeds, and the terms of the Plan expressly disclaim the application of the make-whole rule and common fund doctrine. Moreover, any state-law that the parties may rely upon to defeat the Plan's reimbursement rights is preempted by ERISA. Thus, the Plan respectfully requests that this Court enter an order declaring that the Plan has a right of first recovery over the Settlement Proceeds, and is entitled to recover its full reimbursement interest out of the Settlement Proceeds, in accordance with the Plan's terms.

DATED this 8th day of February, 2016.

BARRON & PRUITT, LLP

/s/ Joshua A. Sliker
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
3890 West Ann Road
North Las Vegas, NV 89031
*Attorneys for the Southwest Airlines Co. Welfare Benefit Plan, incorrectly named as Southwest Airlines Co. Funded Welfare Benefit Plan.*

---

[26] Id.
[27] Davila, 542 U.S. at 213.
[28] Id., at 214.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of February, 2016, I served the foregoing **DEFENDANT SOUTHWEST AIRLINES CO. WELFARE BENEFIT PLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISTRIBUTE INTERPLEADER FUNDS** as follows:

☒ US MAIL: by placing the document(s) listed above in a sealed envelope, postage prepaid, in the United States Mail at Las Vegas, Nevada, addressed to **Cynthia Hall only**.

☐ BY FAX: by transmitting the document(s) listed above via facsimile transmission to the fax number(s) set forth below.

☐ BY HAND-DELIVERY: by hand-delivering the document(s) listed above to the address(es) set forth below.

☐ BY EMAIL: by emailing the document(s) listed above to the email address(es) set forth below.

☒ BY ELECTRONIC SERVICE: by electronically serving the document(s) listed above with the CM/ECF filing system upon the following:

| | |
|---|---|
| G. Dallas Horton, Esq.<br>David L. Thomas, Esq.<br>Christian Z. Smith, Esq.<br>G. DALLAS HORTON & ASSOCIATES<br>4435 South Eastern Avenue<br>Las Vegas, Nevada 89119<br>Fax: 702-385-3101<br>Email: davidthomas@gdallashorton.com<br>*Attorneys for Plaintiff* | Anthony B. Golden, Esq.<br>Puneet K. Garg, Esq.<br>GARG GOLDEN LAW FIRM<br>8880 W. Sunset Road #275<br>Las Vegas, Nevada 89148<br>Fax: (702) 850-0204<br>Email: agolden@garggolden.com<br>Email: pgarg@garggolden.com<br>*Attorneys for Anthem Chiropractic* |
| Ingrid Patin, Esq.<br>PATIN LAW GROUP, PLLC<br>7925 W. Russell Road, No. 401714<br>Las Vegas, Nevada 89140<br>Fax: 702-728-2782<br>Email: ingrid@patinlaw.com<br>*Attorney for Defendant Align Chiropractic* | Cynthia Harris<br>10245 S. Maryland Parkway #238<br>Las Vegas, Nevada 89183<br>*Defendant Pro Se*<br>**Via mail only** |

/s/ Jill L. Williams
_____
An Employee of BARRON & PRUITT, LLP